JOHN F. NEARY, Appellee, v. H. B. JONES, Appellant.

1. **Boundaries:** PROCEEDING BEFORE COMMISSIONERS: SUFFICIENCY OF NOTICE. The proceedings of commissioners appointed by a court to establish boundaries will not be held void because of the failure to give formal notice of the survey and bearing to a party in interest, where it appears that such party and one of his attorneys knew, when testimony was being taken, and testified before the commission, that they declined to furnish other evidence, though requested to do so, and that the attorney was with the commissioners when the survey was made.

2. ———: ———: SURVEY: EVIDENCE. Upon proceedings before commissioners to fix the boundary between two city lots, evidence having been introduced showing that one of the corners of the block in which the lots were situated had never been lost or in dispute, and the commissioners tested the location of the corner by measurements and alignments to original corners not in dispute, which showed that the corner was correctly located, *held,* that the commissioners were justified in making such corner the starting point of their survey, and that the survey was not subject to objection because a certain corner marked by a permanent monument was not made the starting point, though in such event a different result would have been obtained.

3. ———: ESTOPPEL. Although the defendant had once moved his building to a location that he supposed was wholly upon his own lot, *held,* that the plaintiff was not thereby estopped from claiming that such building rested partly upon his lot.

4. ———: ———: COSTS. In view of the evidence as to the corners in question, *held,* that one half of the costs of the proceeding was properly taxed to each party.

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

WEDNESDAY, OCTOBER 18, 1893.

PROCEEDING to establish a lost corner. There was a judgment and decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*Soper, Allen & Morling,* for appellant.

*Thos. O' Connor,* for appellee.

KINNE, J.—This action was originally ejectment for the possession of a strip of land on the boundary between lots 7 and 8 in block 37 of Corbin & Lawler's plat of the town of Emmetsburg, Iowa. The plaintiff owns lot 7, and the defendant owns lot 8, which lies directly south of lot 7; the defendant has a store building and barn on his lot, and it is alleged that they encroach upon the plaintiff's lot. The defendant denies that the buildings are on the plaintiff's lot, and avers that the corner between these lots, and other corners in the east half of block 37, are lost or in dispute, and asks that the owners of the other lots in the east half of said block be brought in, and commissioners be appointed to make a survey and establish corners as provided by the statute, which was done. The commissioners filed their report. The defendant filed exceptions thereto; also a motion to reject the report. The exceptions and motion were overruled. The defendant then filed a motion to modify the report, and for judgment, which was also overruled. Judgment was then entered confirming the report of the commissioners, from which this appeal is taken.

I. It is contended that the defendant was not notified of the meeting of the commission, the survey, or taking of evidence, and hence the proceedings were void. The statute makes no provision for such a notice. Chapter 8, Acts of the Fifteenth General Assembly.

1. BOUNDARIES: proceeding before commissioners: sufficiency of notice.

In *Nesselroad v. Parish*, 52 Iowa, 269, 271, this same question was raised, and it was held that, as the statute did not provide for notifying the parties of the time of making the survey, notice could not be considered as jurisdictional. Counsel for the appellant with much force insists that notice is jurisdictional.

As we view this case, we are not called upon to review that question. The object of notice, even if required in such cases would be to advise the party as to the fact that the commissioners were about to make a survey, and take evidence, so that an interested party might be present, if he desired, and produce any evidence he might have which might tend to show the exact location of the corner or line in controversy. If this opportunity was open to the defendant, and if he knew when the survey was to be, or was being, made, and if he had a reasonable opportunity to introduce his evidence before the commissioners, then the purpose and effect of a notice would have been accomplished. It is not claimed that any formal notice was served. It is not denied that the defendant and one of his attorneys testified before the commission. From the testimony taken upon the hearing on the exceptions and motion it appears that the defendant's attorney knew the commissioners were at work making the survey, and was with them some of the time; that both he and the defendant knew when testimony was being taken; that the defendant was advised by the commissioners that they wanted him to produce his testimony; that he refused because his attorney was not there. There is some contention as to what time in the evening it was that the defendant was notified to bring his witnesses; and, if it be conceded that the hour was unreasonable, it sufficiently appears that the defendant could have introduced his witnesses the next day, if he had desired so to do. We conclude, then, that the defendant had information of all the proceedings.

II. Notwithstanding our conclusion, if it appeared that material evidence had been omitted, to the prejudice of the defendant, we should feel it our duty to reverse the case. Under our holding in *Williams v. Tschantz*, 88 Iowa, 126, that this is a proceeding to fix the true line, and determine the rights of the parties not only with reference to the location of the government corners, but as to the lines as they may have been established by adverse possession, or by acts of acquiescence of the parties, it becomes important that all parties in interest should have reasonable opportunity to be heard in person and through their witnesses.

2. —: —: survey: evidence.

Was material evidence omitted, to the defendant's prejudice? We think not. It is objected that the starting point of the survey was from an iron pin at the southeast corner of block 37. It is said the fact that the pin is located at the original corner is in dispute. No one disputes it, except McCarthy, and he testifies with reference to it that when he and Harrison put the iron pin there "he would not say whether we found the old stake, but my recollection is we found the old pieces of wood, but don't know." Harrison testifies that that corner had always been preserved and maintained, by a stake at first, and afterwards by an iron pin; and that he has owned lot 11, the southeast corner lot in the block, ever since the block was platted. He says, "The southeast corner of the block has never been lost or destroyed or in dispute." The commissioners, in addition to the evidence as to the pin being at the southeast corner of the block, tested the location of the pin by measurements and alignments to the northeast corner of block 57 to the southwest corner of lot 11 in block 37, all of which points were original corners, as is shown by the testimony.

It is insisted that the starting point should have been the section corner one square north of block 37,

which is marked by a permanent monument, and that a survey so made would fix the corner in dispute between the buildings of the plaintiff and defendant, and several inches north of the point fixed by the commissioners. It is evident that the starting point of the survey made by the commissioners was not only established by the testimony as being the precise location of the southeast corner of the block as originally surveyed, but the tests adopted measuring and aligning to other undisputed corners showed that the pin was in fact at the southeast corner of block 37. We do not know of any rule that would compel the commissioners to resort to every known test to ascertain the correctness of the starting point; and when, as in this case, the correctness of the initial point was not only ascertained from the testimony, but made certain by proper measurements and alignments from three other known and undisputed original corners, it would seem that it should be sufficient.

Counsel argue, if the tests were right, the point of commencement must have been wrong, because they found a surplus "on the east side of the east half of ninety-one hundredths feet, while on the west line of the east half it is only fifty-five hundredths, a difference of thirty-six hundredths in one hundred and twenty-nine and five tenths feet." Such a result does not necessarily follow. Grout, one of the commissioners, testifies touching this surplus, over the twenty-four feet, as follows: "Originally these lots were supposed to be twenty-four feet. That was the intention; but the ground was rolling, and considerable grass. Harrison was very anxious to get these corners and measurements exact. We had a link chain, which you can't depend on hardly an hour at a time. We used our twenty-four foot measure after we got the two hundred and sixty-four feet with the link chain. Then we made measurements, and set the pins out at

twenty-four feet. Frequently a discrepancy would be found at the last measurement; then the rule was to distribute that with each one of these pins as we went back. The block corners were tested, most of them.''

III. It is said the plaintiff should be estopped from now claiming that the defendant's building is on

3. ——: estoppel. his lot, as in 1887 the defendant moved his building, so that he supposed it was all on his own lot. We see no reason why the plaintiff should be estopped from making his present claim.

IV. The owners of five other lots in block 37 were made parties to this proceeding, and it is insisted that

4. ——: ——: costs. they should pay their proportionate share of the costs. In view of the testimony as to the corners of these lots found by the commissioners, we think the court did not err in taxing one half of the costs to each party. On a careful reading of all the evidence, we are impressed with the belief that all parties in interest have been fully heard, and that the result reached by the district court is just. We do not think that the defendant's rights have been in any way prejudiced by the manner in which the proceedings before the commissioners were conducted.

The judgment below is AFFIRMED.